IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CYNTHIA MARTINEZ,
as Personal Representative of
the Estate of Orlando Gabaldon,

        Plaintiffs,

v.                                                           CIV No. 01-668 JP/LFG-ACE

ELOY MONDRAGON, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL

THIS MATTER is before the Court on Plaintiff's Motion to Compel and for Sanctions against Defendant Wackenhut Corrections Corporation [Doc. 25]. Plaintiff Cynthia Martinez ("Martinez"), as personal representative of the Estate of Orlando Gabaldon, moves the Court for an Order requiring Wackenhut to fully respond to written discovery requests. The Court considered the motion and documents submitted in support of Martinez's motion, Wackenhut's two responses[1] and attached exhibits, and Martinez's reply. Oral argument is not necessary.

---

[1] Martinez asserts that Wackenhut improperly filed two separate responses [docs. 32 & 33] to her Motion to Compel and that its second response should be stricken since the two responses exceed the page limit of 24 pages. [Doc. 45.] Although the rules do not contemplate filing multiple briefs in response to one motion, the Court elects to consider both responses on this occasion. In the future, the parties should file briefs within the proper page limit allowances and/or move to exceed the page limits, as needed, under the applicable rules. Wackenhut's later filed motion for leave to file the two responses [doc. 46] is granted.

1

## Background

Martinez brings this lawsuit on behalf of Orlando Gabaldon's ("Gabaldon") estate. Mr. Gabaldon was an inmate at the Guadalupe County Correctional Facility in Guadalupe County, New Mexico when he was struck and killed by another inmate, David Eason ("Eason"). Martinez alleges that Defendants knew or were recklessly indifferent to the fact that Eason was a suspected member of a white supremacist gang and that this gang had threatened Gabaldon in the past. Gabaldon is a suspected member of the Los Carnales gang. Martinez brings an Eighth Amendment claim for Defendants' alleged deliberate indifference to a substantial risk of serious harm that resulted in Gabaldon's death and state tort claims. Martinez contends that Wackenhut is vicariously liable for the individual Defendants' alleged misconduct.

Defendants deny the allegations and further argue they had no reason to believe that Eason had any intention to harm Gabaldon or that gang activity played a significant role in Gabaldon's death. [Doc. 33, p. 13.]

The discovery disputes in this matter focus on Martinez's requests for documentation of Wackenhut's internal investigation of Gabaldon's death (RFP No. 1), Gabaldon's and Eason's inmate files (RFP Nos. 2 & 5) and gang-related information in the prison (RFP No. 4). In addition, Martinez asks for information concerning the way inmates are "classified" and "placed" in Wackenhut operated facilities (RFP Nos. 6 & 8). Characteristic of most of these document requests is Martinez's failure to appropriately limit the requests by time, place or scope and her use of all inclusive language like "any and all documents in your possession."

Interrogatory No. 1 is also the subject of this discovery dispute. That interrogatory requests that Wackenhut provide "each and every reason" for its denials of previously submitted answers to

requests for admission, "in specific detail, including any and all facts of which you are aware supporting your denial, any and all documents on which you rely in support of your denial, and each and every witnesses (sic) on whose testimony you may rely to support your denial."

Wackenhut objected to the proposed discovery on the grounds that many of the document requests in dispute allegedly were overly broad, unduly burdensome and harassing on their face. Wackenhut also asserted claims of privilege with respect to some of the requests. It appears that during the briefing process the parties resolved some of these discovery disputes, at least in part. Each discovery request and/or objection is addressed more fully below.

## Analysis

Martinez is correct in stating that the federal rules provide for broad and liberal discovery. However, discovery is not without limits. Rule 26 expressly contemplates the limitation of discovery if the burden or expense of the proposed discovery outweighs its likely benefits, "taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2)(iii); Burka v. U.S. Dept. of Health and Human Services, 87 F.3d 508, 517 (D.C. Cir. 1996). After consideration of the needs of the parties, the court may, its exercise of discretion, deny discovery completely, limit the conditions, time, place or topics of discovery, or limit the manner in which information is to be revealed. Burka, 87 F.3d at 518.

Thus, the Court is mindful of the need to balance one party's right of discovery with an opposing party's right to be free from intrusive and burdensome discovery. Koch v. Koch Industries, Inc., 203 F.3d 1202, 1238 (10th Cir.), *cert. denied,* 531 U.S. 926, 121 S.Ct. 302 (2000). "Indeed, the 1983 and 1993 Advisory Committee Notes [to Rule 26(b)(2)(iii)] indicate this sub-section was

added 'to encourage judges to be more aggressive in identifying and discouraging discovery overuse' and 'to enable the court to keep tighter rein on the extent of discovery.'" Id.

Moreover, due to abusive, unchecked litigation practices that significantly increased the costs of litigation, congested court dockets, and contributed to delay the final disposition of litigation, Congress enacted the Civil Justice Reform Act of 1990 ("CJRA"), 28 U.S.C. § 471, *et seq.* The goals of the CJRA are to expedite the ultimate disposition of litigation and to reduce the costs. These goals are accomplished by close judicial scrutiny of the discovery process, establishment of case management deadlines, and utilization of alternative dispute resolution procedures.

Shortly after the adoption of the CJRA, the Federal Rules of Civil Procedure were modified to dovetail with the CJRA. Indeed, Rule 1 of the revised rules adopts the two-pronged CJRA goals as part of the Rules' purpose. "They [civil rules] shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."

In addition, recent modifications to the federal rules further limit the scope of discovery. For example, Rule 26 previously provided, "Parties may obtain discovery regarding any matter, not privileged . . . ." The revised rule now provides, "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." This rule change signals a narrower scope of permissible discovery than existed before. Therefore, a party is not permitted to plead its allegations in indefinite terms and then conduct broad discovery hoping to benefit from a fishing expedition. Koch, 203 F.3d at 1238; Fed.R.Civ.P. 26, advisory committee notes.

With this balancing process in mind, along with the goal of providing closer judicial scrutiny over the discovery process, the Court finds that a number of Martinez's discovery requests are

4

impermissibly broad and that the burden of the proposed discovery outweighs its likely benefits. The specific rulings are set out below.

### Requests for Production

#### 1. *Request for Production No. 1 - Wackenhut's internal investigation*

Martinez seeks "any and all documents created during or as a result of any internal investigation" by Wackenhut concerning Gabaldon's death. Wackenhut initially objected on a number of grounds, including arguments that the request was vague, overbroad, unduly burdensome, harassing on its face, and protected by a privilege, specifically the privilege for internal self-critical review. Wackenhut now apparently has produced portions of this file and has retained only one 2-page document on grounds of a self-critical analysis privilege.[2] Wackenhut was to provide a privilege log regarding any documents that were being withheld but claims that the motion to compel was served on it before it had an opportunity to do so.[3]

According to Wackenhut, only one 2-page document is at issue. However, Martinez contends that Wackenhut is "apparently hiding documents" that might be responsive to this request, based on a review of investigatory documents Martinez obtained from a "third party," who purportedly received these documents from Wackenhut.

---

[2]Generally, the self-critical analysis privilege is based upon concern that disclosure of documents reflecting candid self-examination will deter or suppress socially useful investigations and evaluations or compliance with law or with professional standards.

[3]Wackenhut argues that the Court should deny this request or the entire motion based on Martinez's lack of "good faith discussion" that consisted of a 15-minute telephone call and two letters. The Court declines to deny Martinez's requests on this basis. However, it appears from statements by counsel in the briefing that both parties could have done more to clarify what documents would be produced and when the productions would be made, thereby avoiding the need to raise at least some of these issues by motion to the Court.

Wackenhut is directed to produce the 2-page document it claims is protected by the self-critical analysis privilege.[4] As acknowledged by Wackenhut, the Tenth Circuit has not recognized the self-critical analysis privilege, nor is the privilege adopted as part of the federal Rules of Evidence. At a minimum, the status of any such privilege is in dispute. [Doc. 33, n. 2.] While some courts have recognized the privilege in the context of employment litigation, other courts have not embraced the privilege. Aramburu v. Boeing Company, 885 F. Supp. 1434, 1440 (D. Kan. 1995). The Tenth Circuit has declined to recognize the privilege for affirmative action plans. Id. The federal courts in the District of Kansas similarly have refused to embrace the self-critical analysis privilege in Title VII cases. Id. at 1441. Moreover, at least one district court in this circuit has been unwilling to recognize this privilege in a § 1983 excessive force case. Id. (internal citation omitted).

To the extent that Wackenhut has in its possession or control other documents that are responsive to Request No. 1, they too should be produced.[5] If they are being withheld based on a privilege, they should be described in an appropriate privilege log. If Martinez already is in possession of an investigative file, or documents she believes pertain to Wackenhut's internal investigation, counsel should confer with each other to determine what documents either party does or does not possess. As part of their initial disclosures, both parties are obligated to provide a copy

---

[4]The Court declines Wackenhut's invitation to find Martinez waived any argument regarding the self-critical analysis privilege. The Court notes that Wackenhut explained that it was refusing to produce only one document and yet failed to promptly supply an appropriate privilege log as to this document. The failure to produce a privilege log could be deemed waiver of the privilege. Haid v. Wal-Mart Stores, Inc., 2001 WL 964102 at *1 (D. Kan. June 25, 2001). Both parties are advised to carefully adhere to the pertinent rules.

[5]The Court notes that a stipulated protective order is in place with respect to inmate files. [Doc. 38.] Should an additional protective order be required regarding some of the information that may be produced as a result of this Order, the parties should submit an order as needed.

of or description by category of all documents that are in the possession of that party and that the disclosing party may use to support its claims or defenses. Fed.R.Civ.P. 26(a)(1)(C).

### 2. *Request for Production Nos. 2 & 5: Inmate Files*

Martinez requests "any and all documents" concerning Gabaldon and Eason, including their classification and placement file and documents regarding gang affiliation, if any. Wackenhut responds that it only possesses some portions of these inmates' files because once an inmate leaves a Wackenhut facility, the file is returned to the Department of Corrections. It is axiomatic that a party cannot produce documents it does not have. Wackenhut apparently has now provided Martinez with those portions of these two inmate files that it maintained. It appears that Wackenhut objects to producing any documentation of these two inmates' alleged gang affiliation on grounds that such a request is overbroad, unduly burdensome and a harassing "any and all" request.

Because Martinez's theory of the case is that the victim's and assailant's gang affiliation has a bearing on Gabaldon's death, a request for information concerning Eason's and Gabaldon's alleged gang activities may be relevant. Therefore, Wackenhut is required to produce any documentation that it possesses concerning gang activities or affiliation of Gabaldon and Eason, and threats or acts of violence by gangs directed at or by Gabaldon or Eason for a period of five years preceding Gabaldon's death. Should any responsive documents be protected by a privilege, Wackenhut should provide an appropriate privilege log describing those items.

### 3. *Request for Production No. 4: Gang-Related Information*

Martinez asks for "any and all documents . . . concerning the White Supremacist and Los Carnales gangs, including but not limited to any and all documents concerning membership in these gangs during the past ten years, whether suspected or verified, conflicts, rivalries, or violence by these

gangs, and any other documents regarding these gangs' activity." Wackenhut objected on the grounds that such information would be unduly burdensome to obtain and produce, and is likely to be extremely sensitive with the potential to create life threatening situations and further objected on grounds that the request was vague, unclear, overbroad, unlimited, not reasonably calculated to lead to the discovery of admissible evidence and harassing.

Wackenhut argued, in part, that this type of unlimited request would require it to search for documentation at 33 detention facilities, not counting many other Wackenhut medical facilities, it operates in the United States. In Martinez's reply brief, she contends that if Wackenhut had conferred in good faith regarding this request, she would have clarified Wackenhut that she did not seek documentation of gang activity in prisons outside New Mexico. Martinez seems to overlook or disregard her own responsibility to draft a proper discovery request with appropriate limits, as to time, place and scope.

The Court finds that the Request No. 4 is overbroad and unduly burdensome on its face, and that there is no need for discovery of the magnitude Martinez requests. Even Martinez's concession that the request can be limited to the State of New Mexico is too broad because she provides no basis for finding that gang activities at other facilities in New Mexico are relevant to claims concerning Gabaldon's death at one facility. Moreover, the request is overbroad with respect to both time and scope. The Court does not agree that a period of ten years of reasonable under these circumstances. In addition, Martinez presents no compelling reasons why she needs general information regarding gang rivalries, conflicts and violence that have nothing to do with Eason or Gabaldon. Martinez not only seeks documents of "verified" rivalries, etc., her request goes so far as to ask for *suspected* rivalries and conflicts, which virtually asks for the impossible. Such a request truly is the type where

8

the defendant would be required "to engage in mental gymnastics to determine what information may or may not be remotely responsive." Mackey v. IBP, Inc., 167 F.R.D. 186, 197 (D. Kan. 1996).

The Court agrees that documentation of threats of violence or actual attacks by gangs directed at or by Gabaldon and Eason may be relevant to Martinez's claims, and that therefore, Wackenhut will be directed to produce any such documentation for a period of five years preceding Gabaldon's death. All other aspects of Martinez's motion to compel gang-related information are denied.

### 4. *Request for Production Nos. 6 & 8: Classification and Placement of Inmates*

Request No. 6 seeks "any and all" documents . . . concerning Jeff Serna, Classification Bureau chief, including, but not limited to all documents produced or created during his classification of inmates housed in Wackenhut facilities, all documents concerning his job functions and duties, and any and all documents concerning transfers of inmates within, to, or from Wackenhut facilities which he ordered or approved."

In response, Wackenhut argues that Mr. Serna is not an employee of Wackenhut and that any responsive documents would be in the possession the New Mexico Corrections Department. Wackenhut also objected on grounds that the request is overbroad, unlimited, unduly burdensome, harassing on its face and not reasonably calculated to lead to the discovery of admissible evidence. Martinez acknowledges that Mr. Serna is not an employee of Wackenhut (and has amended the complaint to add him as a defendant), but argues that Wackenhut still may possess some responsive information since Mr. Serna allegedly was sent to the Lea County Correctional Facility in 1999 and was responsible for the removal of Gabaldon from protective custody.

Again, this request is overbroad to the point of being nonsensical. Martinez asks for any and all documents that merely ***concern*** Mr. Serna, and then more specifically (but not much) for

9

documents regarding Mr. Serna's classification of inmates at any Wackenhut facility for an unlimited period of time. Documents that concern Mr. Serna could be encompass irrelevant and unnecessary information like leave slips, salary information, insurance beneficiary designations and so forth. Martinez did not seek to narrowly tailor the request for information relevant to the claims or defenses. Fed.R.Civ.P. 26. Wackenhut will be directed to produce any documents in its possession concerning a decision, if there was one, to remove Gabaldon from protective custody in 1999. All other aspects of the motion to compel regarding Request No. 6 are denied.

Request No. 8 asks for "any and all documents . . . relating to all committee recommendations to all Wackenhut-run correctional facilities concerning the classification and placement of Orlando Gabaldon, David Eason, and any and all other White Supremacist and Los Carnales gang members during the past ten years."

Wackenhut asserts a number of objections to this request, including that it is a duplication of prior requests, that it is vague, unclear, overbroad, unlimited, harassing and not reasonably calculated to lead to the discovery of admissible evidence. Wackenhut also argues that to the extent it requests documentation of gang-related activities, such information is extremely sensitive and potentially dangerous if disclosed.

The Court again agrees that the request is overbroad as to time, place and scope. Martinez fails to provide any convincing reasons why she needs the requested information for "all Wackenhut-run facilities," for "any and all other White Supremacist and Los Carnales gang members" and/or for a period of ten years. Martinez's brief argument regarding why she needs this information actually provides far more reasonable limits. For example, she states that if Gabaldon was placed in protective custody because of gang affiliation or threats by gangs, such information is relevant to her claim. The

Court agrees that this limited information may be relevant to her claim, and therefore, directs Wackenhut to produce any documentation in its possession concerning the reasons Gabaldon was placed in or removed from protective custody prior to his death in 1999. All other aspects of Martinez's motion to compel information regarding Request No. 8 are denied.

### **Interrogatory No. 1**

Interrogatory No. 1 provides:

> If you deny any of the Requests for Admission contained in Plaintiff's First Set of Requests for Admission to you, in whole or in part, please state each and every reason for such denial in specific detail, including any and all facts of which you are aware supporting your denial, any and all documents on which you rely in support of your denial, and each and every witnesses (sic) on whose testimony you may rely to support your denial.

This interrogatory concerns five requests for admissions that Martinez served on Wackenhut. Wackenhut denied the first four requests, without waiving objections it also set forth. As to the fifth request, Wackenhut asked for clarification but states it never received any response from Martinez. Wackenhut objected to Interrogatory No. 1 on the grounds that it was unduly burdensome, oppressive, overbroad and an improper form of interrogatory. Wackenhut also objected to the interrogatory to the extent that it might be considered a single interrogatory rather than multiple interrogatories for purposes of determining how many interrogatories had been served.

Martinez argues that Wackenhut's "unqualified denials" are improper and lack merit. She further asserts, relying on Fed.R.Civ.P. 36(a), that "[i]f Defendant lacked a factual basis for making such denials, it should either have admitted the requests or 'set forth in detail the reasons why [it] could not] truthfully admit or deny the matter.'" Martinez misconstrues Rule 36(a), which states that "[t]he answer [to a request for admission] ***shall specifically deny the matter or set forth the***

11

*reasons"* why it cannot admit or deny the matter. Rule 36(a) (emphasis added). Here, Wackenhut specifically denied the first four requests for admission. Under those circumstances Rule 36 does not require Wackenhut to also set forth the reasons for its denial, even if Martinez challenges the truth of the denials. Martinez, of course, is free to attempt to impeach Wackenhut's responses to Requests for Admission, and if Martinez ultimately establishes that the denial was improper, may seek to recover reasonable expenses incurred in proving the matter, including reasonable attorney fees. Fed.R.Civ.P. 37(c)(2).

Martinez also argues that Interrogatory No. 1 is "clearly limited in scope and breadth and . . . does not contain any subparts contrary to Defendant's erroneous assertion." The Court disagrees. First, the interrogatory appears to contain at least three subparts that are directed to each of four requests for admission. Thus, this "single" interrogatory contains a minimum 12 separate questions. More importantly, the interrogatory is so open ended and overbroad that Wackenhut cannot fully answer without undue burden.

In <u>IBP, Inc. v. Mercantile Bank of Topeka</u>, 179 F.R.D. 316 (D. Kan. 1998), the Court analyzed whether "contention interrogatories" that asked a party for every fact and every application of law to fact that supported certain allegations in the complaint were overbroad and burdensome. In concluding that a number of these interrogatories were overbroad and unduly burdensome, the Court reasoned that to answer the proposed discovery "would too often require a laborious, time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant and trivial details." <u>Id.</u> at 321. The Court noted that some of these contention interrogatories "would have [the party] itemize its evidence and trial strategy. This goes beyond the scope of reasonable discovery." <u>Id.</u> at 322. The Court also commented that other discovery procedures, like depositions and

production of documents better addressed the needs presented by the interrogatories. Id. Therefore, based on the "need for fair access to material information and the burden of producing it," the Court concluded that the burden of answering many of the contention interrogatories outweighed the benefit to be gained. Id. at 320-21.

The contention interrogatories addressed in IBP are similar to Interrogatory No. 1 in this case that also asks for each and every fact, document and witness supporting a certain proposition. Consistent with the reasoning set out by the Court in IBP,[6] I also conclude that this type of request is overbroad on its face and unduly burdensome, and that, therefore, Martinez's Motion to Compel further responses to this interrogatory is denied. Martinez has other discovery tools at her disposal to make inquiries into what facts support Wackenhut's contentions, what witnesses support Wackenhut's position and what pertinent documents exist. *See* Lawrence v. First Kansas Bank & Trust Co., 169 F.R.D. 657, 662-63 (D. Kan. 1996) ("To state 'all' facts in support of a negative proposition . . . includes an inventory of evidence which the defendant itself would offer at trial to refute the claims of plaintiff. . . .[I]t would further require defendant to provide essentially a review of facts and commentary to support its evaluation . . . .")

## Conclusion

Many of the disputed discovery requests propounded by Martinez are of the nature that constitute overkill by a litigant. These kinds of overbroad and unduly burdensome discovery requests highlight the very reason the CJRA was adopted and why the scope of discovery has been limited by recent amendments to the federal rules. The demand that an opposing party devote untold amounts

---

[6] While IBP is not binding on this Court, I find it persuasive authority on the question before me.

of money and time in producing information that is marginally relevant, at best, is inappropriate and inconsistent with the new philosophy of the revised rules or of the CJRA.

IT IS THEREFORE ORDERED that:

(1) Martinez's Motion to Compel and for Sanctions against Defendant Wackenhut Corrections Corporation [Doc. 25] is granted in part and denied in part, as set forth above;

(2) Wackenhut is directed to produce to Martinez those documents identified above within twenty days of the filing date of this Order;

(3) Martinez's request for sanctions is denied; and

(4) Wackenhut's motion for leave to file two responses is granted.

_____
Lorenzo F. Garcia
United States Magistrate Judge